8-2 Beery v. United States Good morning, Your Honors, and may it please the Court. I am counsel for Kansas property owners who are bringing this appeal. This is a Trails Act takings case in which the government's liability turns upon an issue of Kansas state law. The particular right-of-way in this case was established by condemnation in the late 1800s, 1880. I have just two questions about, sort of preliminary questions. In the decision of the Court of Federal Claims at page 2, there's a reference to a certification to the Kansas Supreme Court. I assume, and I could be wrong, I didn't see any mention of this in either your brief or the government's brief, so I assume this is something that's no longer pertinent, at least for purposes of our case now. The question that Judge Firestone certified was a different issue. This question that's before the Court today was not certified. She just ruled on the dismissal of these owners. The question that was certified, and I think, Your Honor, that's a very good point because certification would be appropriate under Kansas statute. They allow certification, but they did certify a different question. We actually briefed it and argued those issues to the Kansas Supreme Court, and then they, on reflection, concluded they didn't have jurisdiction under their statute. So we don't have to worry about that? No, but this Court could certify the question to the Kansas Supreme Court, should you wish to do so, and we do believe that that would be an appropriate course. Okay. Now, one other question. We have in the record here these various deeds, and in some cases we have them, the original photocopies of what's written out, and then we have, later we have a typed version for the benefit, I guess, of the parties in the Court. Now, in the case of the Rollins deed, if you go to JA 706, we have there the deed from the Rollins, okay? And then we have, at page 1436, we have the typed version of that, correct? That would be, I'm looking at my appendix. You mentioned, Your Honor, 1436, is that... 706 and then 1436. Yes, I believe that is correct, just looking at that right now. So it's the same instrument, one is transcribed, one is... Now, it says, on 1436, it says, for and in consideration of one dollar, and the convenience of all the right of way. Correct. But if you go back, and I'm only speaking for myself, I look at 706, and I don't see the word convenience there, it looks to me like, for and in consideration of one dollar, and the conveyance. That word looks more like conveyance, and I'm only speaking for myself, I could be totally wrong, but I read that word to be, at the end of the line, the conveyance, because you have what looks like a Y coming down onto a D. I used a magnifying glass, I think he's right. And I would tend to agree, as I look at it right now, Your Honor, it does appear to be a Y, so how, if anything, does that affect the case? I don't think that changes the case at all, in terms of the principles of Kansas law that have been defined... Well, not in terms of the principles of Kansas law, but in terms of what it means, at least for the property that's at issue, that's controlled in part by the rolling deed. Correct. I would say that whether the word convenience were, in fact, I think the word convenience, this was not a conveyance of the fee of state, and whether we say it's conveyance, which I think does appear to me, looking at the appendix, to be the correct reading of that word, I think that just affirms the point that we've made in this case, which is that Kansas law is emphatic, in terms of conveyances of strips of land to a railroad convey an easement, they do not convey the fee title. And that doesn't matter, and the court has said, it doesn't matter, I'm quoting now, even from the Stone Court's most recent statement, in Kansas, railroads take only an easement and strips taken for right of way, regardless of whether the condemnation by deed, or by condemnation or by deed. And then certainly the Abercrombie case makes clear that even if the conveyance had words that said fee, estate... documents so much, because as I see it, you don't really dispute the law. I mean, you seem to sort of agree with at least the basic structure of the law, as I understand your disagreement with the government and your disagreement with the Court of Claims to some extent, is that you believe that they misapply, that law has been misapplied to these particular documents. Well, I do believe the Court of Federal Claims dismissed them because it was laboring under an improper understanding of Kansas law. When you read the Court of Federal Claims decision, it is rather brief, without citations to Kansas law, so we're inferring somewhat. But the language that Judge Firestone used says that because the deeds don't contain a reversionary provision, therefore she's going to conclude that it conveyed the fee estate. That is entirely backwards with how Kansas Supreme Court has described their law. It's not a default... So from a legal standpoint, your argument is that those are factors that the court could consider, but they're not determinative. So the mere fact that they're absent doesn't answer the question. Correct. That in fact, when you look at Kansas law, again, particularly the Abercrombie decision and the Harvest Queen decision, the law is emphatic that Kansas has a public policy of defining or upholding that these conveyances are easements where the land goes back to the adjoining property owners when it is no longer used for a railroad. And particularly, as this court in Preseau noted, Kansas has the same view of condemnation, which these conveyances were executed in the context of the condemnation of the corridor. The corridor was condemned within about a 10-year period. You have these quick claim deeds from a few specific owners. Let me ask you, is it your position that you can have a conveyance, say there's a condemnation or a conveyance of just a right-of-way, is it your position that the owner of the overall property can't later come in and convey what wasn't just conveyed in the easement conveyance? In other words, can't come in and give everything away? Under, certainly in using the language in these conveyances, the facts of this case. No, no, I'm just talking as a matter of law. The concept of an owner being able to come in later and say, and as I take your question, Your Honor, it's the railroad condemned an easement, and then 10 years later the owner said, Oh, I want to give them the full actual fee estate in the land. That's correct. That's much better than the way I said it. That would have to be, under Kansas law, extraordinarily explicit in the conveyance. You would say, if it was explicit, it could be done. There's no legal bar to it being done. If the description is a strip of land used for right-of-way, then I would say they can't even do it under the Kansas statute that we quote, because it specifically limits the railroad's ability to hold title to such an estate as being only an easement for purposes of the railroad. That's their statute. The railroad's powers as a railroad. Now, if the owner wanted to, as in some cases, convey a large track of land to a railroad for use as something other than a railroad right-of-way, well, that's a different case. These are cases we're concerned with today where we have a narrow 100 foot wide or 66 foot wide strip of land that the conveyance was given in that context. You're saying that even if the landowner wanted to, he or she could not convey to the railroad fee simple absolute ownership in the strip? If it's described as a strip of land to the railroad to be used for a right-of-way, I would interpret Kansas statute, which is 66-501, it used to be called 901-1316. It's an 1868 statute and it's been the same and reenacted since then. And it says that the railroad corporation's power to hold the title to or voluntary grants of real estate, it says, and I'm quoting, but the real estate received by voluntary grants shall be held and used for the purpose of such grant only. And that's by the railroad. Now, the railroad would, it doesn't affect the railroad in that hypothetical because the railroad really has no need for a fee of state in the strip of land. It is simply acquiring that to operate a rail line so it achieves its full need and the full public policy of being able to operate a railroad with just an easement. And I had reserved five minutes, so I will stop at this point and then address, reserve the balance of my time. Thank you. Ms. Robertson. May it please the Court, Nina Robertson on behalf of the United States. With me at the council table is Chris Chartis, my colleague from the Department of Justice. Claimants have not met their burden of demonstrating that they own a compensable right in the rail corridor land. To meet this burden, they have to show that the deeds at issue in this case conveyed an easement interest, a mere easement interest and not fee title. And as the record shows, these deeds unambiguously conveyed fee title to the railroad. What's your response to the statutory argument that, in fact, there's a statute that says if we're only talking about the strip, the strip of land, then by definition there can't be a fee title transfer regardless of what the document says. Your Honor, to return to the language of the statute, we respectfully disagree with our opponent's view of the control of the statute. There's no reference in the statute of anything to strips of land. In fact, if we look at the language of 66-501, it empowers railroads to hold and take voluntary grants as well as to purchase and hold with the power to convey real estate. And the railroad in this case was operating pursuant to that authority and there was no restriction on its ability to acquire fee simple interest in rail corridor land. There's simply no restriction. In addition, if you look at the Schoenberger case, the Kansas Court of Appeals in that case found as much as well. In interpreting this statute, it explicitly held that railroads can acquire fee title interest to rail corridor land. And as well, the Schoenberger and Abercrombie cases in interpreting the statute have never held that the statute restricts property owners' ability to convey fee title interest to rail corridors. So there's simply no law restricting the railroad's power to hold rail corridor land in fee title. And that's exactly what occurred here, Your Honor. The deeds that issue in this case conveyed fee title interest to the railroad. And therefore, it didn't hold a mere easement and the claimants had not met their burden of showing as much. I would, of course, note that under Kansas law, under Statute 58-2202, every conveyance in Kansas, every conveyance of real estate, passes all of the estate unless otherwise specified. And as well, in Stone, the court held that the general rule is that deeds purporting to convey a railroad to a strip, piece, parcel, or tract of land which does not describe or refer to or use the purpose or indirectly limit the estate are generally construed as passing an estate in fee. So I'm going to suggest one question, just sort of to clean on the record here. You recall our discussion that we had with Mr. Hearn about this question of whether the Rollins deed says convenience or conveyance. Do you have a view on that? We don't have a view on that, Your Honor. We didn't catch that distinction. And for the record, the transcriptions are worse admitted by the plaintiffs. And we did not catch that discrepancy, but in fact, it doesn't make a difference. Okay. Yeah. Again, it doesn't make a difference because the deeds are presumed to convey the entire estate. You're saying whether it's convenience as in the transcription or whether it's conveyance. As I read the photocopy document, it doesn't make a difference. It doesn't make a difference, Your Honor. And that's because in Kansas, deeds are construed to convey the entire estate unless otherwise specified. And that language does not restrict the purpose of the conveyance at all. And to pick up on Your Honor's point about the fact that the Railway had already acquired the strip of land as an easement. One question, and I'm sorry to interrupt you in the middle of a sentence, but our time is sort of brief here. All of these deeds in all of the cases, except for that there's the condemnation in one of them. But all of the deeds contained in the deeds references to the amount paid. To what extent is that a consideration? In other words, in one deed, I think it's $3,500, the Julia Fair deed. And then there's another deed where there's a price of $1 and a couple of hats, $144, $165. To what extent does the amount of money recited in the deeds inform our analysis? It should not control the analysis, Your Honor. It may inform it, but it's not controlling. I would point the courts to Hotchkiss' decision. It's not in our brief, but there's a clear Kansas law as delineated in Hotchkiss that the amount of consideration does not control the legal analysis of what actual right was conveyed. What we point to in our brief, as Your Honor may recall, is that in the Fair deed, where this consideration was considerable for $3,500, that amount was quite a bit larger than what the railroad had paid to condemn the easements, such that the property owners had already received payment in condemnation for the acquisition of the easement interest. And then subsequent to that, they received additional consideration. And the implication from that is that there was a conveyance of an additional right. The railroad had already acquired an easement, and through additional consideration, they were acquiring fee titles. So in that case, you're saying in the case of the Julia Fair deed, the price indicated does sort of inform the analysis. It informs it insofar as it is additional consideration that is above and beyond what was already paid for the easement. And the implication from that is that the intent of the parties was to transfer more than an easement, which is to say to transfer a fee title. It's a relative amount. It's hard to tell what the intents of the parties were so long ago. But isn't it true that at that point when the condemnation had been done, the property was in the name of the husband? And once the husband was deceased, that could have just been as easily, rather than go through the condemnation proceeding a second time, they wanted just to make sure that it had that property. It didn't need to, Your Honor, because in the Fair case, as we point out in our brief, Thomas Fair was a sole grantee. And then his wife would have inherited that entire property. So there didn't need to be additional clarification. Perhaps there would have been had they been co-owners as an initial matter. But subsequent to that, there was no need for clarification as the claimant suggests. Because of the inheritance. Yeah. Sorry. What's the relevance in your view, if any, of the dollar amounts recited in the various other deeds? They range from $1, $117, $144, $65. They're not legally significant, Your Honor. They don't – they don't – they were in a legal way. What's important is that consideration was – made the conveyance valid. And what's important is to look at actually the property that was conveyed. And as the deeds reveal, there are no limitations on the interest conveyed. And under Kansas, the background presumption, under Kansas statute, and as – I understand that you state the general rule from Stone. And they do state that the general rule is that, you know, in the absence of any restrictions. But you can't read Stone in isolation because Stone doesn't purport to overturn all of the other cases. So when you look at Abercrombie and you look at the other cases, it does seem that there is a public policy statement that the Supreme Court of Kansas has made that says we don't want a situation in which, you know, that we as a government have encouraged people to give up these rights of way so we could have an efficient rail system across the country and then have a situation where someone could transfer that property in a way that is antithetical to the other uses. So, for instance, you've got 100 strip of land, maybe in the middle of farmland, and we're going to allow then the railroad to transfer it to somebody who would do something that would effectively destroy the appropriate use of that farmland. And so, I mean, Abercrombie makes clear that given that overlay, that it's got to be very clear that you didn't intend to limit. Abercrombie actually doesn't state as much, Your Honor. It doesn't shift the presumption in any way. It highlights in one sentence the potential public policy interest of transferring uses to some sort of potential obnoxious use that the neighbors might perceive. But it never states that that consideration is controlling. In fact, over and over again, the Kansas Supreme Court has returned to the language of the deed and has returned to this background presumption that all of the estate is conveyed unless otherwise limited. The claimants point to public policy considerations that the Vermont Supreme Court had, but that has never animated the analysis of the Kansas Supreme Court. There is simply no language to suggest as much. It does seem kind of interesting when you look through all the facts and all the cases that stone the case that you think is the best for you is the one where the railroad transferred the property to a school. And so you could see why the Supreme Court might have said, well, in this case, it doesn't seem so vile to have it transferred to a school. So that's the one where you get the best discussion for you. And the other side would say bad facts make bad law. All the other cases where the transfers seemed to be where the railroad was trying to really just profit or to do things that would hurt the landowner, the Kansas Supreme Court seemed to say no. Respectfully, Your Honor, the second use, the use subsequent to the railroad's conveyance, was never analyzed as a consideration in the legal analysis. I would also point, Your Honor, to the Danielson and the Knott decisions. So those are two other opinions in which the Kansas Supreme Court held that a conveyance to a railroad was in fee title. And those courts, again, do not find important at all the second use of the land. And they don't take the public policy consideration into account at all. In addition, Your Honor, I would also point, Your Honor, to the fact that the parcels in this case, or that there are parcels in this case, they are not all strips of land. So the Rowland deed and the two irrigation loan trustees are for parcels of land. They are not for strips of land, as the claimant suggests. So under their construction, if the fact that a strip of land is what controls the analysis in Kansas, the Rowland and the irrigation trustees do not even fit that. Or are they continuous parcels? They're not continuous parcels, Your Honor. I can direct you to the maps of the parcels. They're in the appendix. And they are separate parcels that were established even before the condemnation. If you look at Joint Appendix 718, you'll see the non-continuous parcels, as well as JA 719. Those are two parcels that were established, again, prior to the condemnation.  So to the extent there are any public policy considerations, which shouldn't really enter into this Court's analysis, incorporation of those considerations does not help claimants meet their burden of showing that only an easement interest was conveyed. You're saying, Ms. Robinson, that the properties involved with respect to the American Packaging Corporation and Collins Industries plaintiffs, which are the Rowland deeds and what follows, that those don't involve the land that was originally condemned? The overlap was part of the land that was condemned. Oh, I see, okay. If you look at that, you see there's some overlap there. Where is that? I'm looking at 718? JA 718 and JA 719. Okay, show me where the overlap is. You'll see the strip there. Where the strip is and where the overlap is. Yeah, so the strip there, the strip is the leftmost. In JA 718, the leftmost indication of a box there is a long strip. What's in yellow? Oh, I'm sorry, Your Honor, I actually don't have them printed out in color. This long? Yeah, the long, yellow, continuous stripe. And then you'll see boxes protruding from that. And those are the parcels that are at issue in this case. But again, regardless, Your Honor, the point is that under Kansas law, there is this background presumption that all of the estate is conveyed. And the plaintiffs, it is a plaintiff's burden to show that the deeds are only conveyed in ease of interest. And I just wanted to underscore that point because I know in the briefs there's some disagreement about that. The plaintiffs bear the ultimate burden of persuading this court that a taking has occurred. And to do that, they must establish as a threshold matter that they own a compensable property right. When they moved for summary judgment in the lower court, they only submitted the condemnation report, and both sides conceded the condemnation report. Let me ask you, Ms. Robinson, two questions. One relates to the Roberts, I'm sorry, the Roland case. You have a deed in there, one of the deeds in the record is at 982, and it's a 1906 deed from the Rolands to someone else. What, if anything, is the relevance of that deed? That's not relevant. Sorry, could you tell me the record set again, Your Honor? Yeah, 982. 982. Did that, I believe claimants referenced this deed, is this the head injury deed that was, I believe they relied on this in their reply brief for the proposition. Is it the same property that's? It's not the same property, Your Honor. They relied on it, again, for the first time in their reply brief, so I apologize that I haven't analyzed or briefed this issue because it was raised for the first time in reply. But I believe what the claimants meant to demonstrate here is that somehow the irrigation loan trust chain of title was faulty, and they never disputed that at the trial court level, and they are attempting now to call, to put in dispute that issue, but it is simply not an issue as we briefed in our response brief. It's a proper chain of title, and irrigation loan trust did have. One final question I have. At 1482 and 1483, we have the deed that relates to the Beery plaintiff, correct? Yes. Two questions there. One, at 1483, you have what appears to be a right-of-way deed, and someone, it looks like, has written over it warranty. Warranty deed, yes. Is that something, whereas in the briefs, it's referenced as a right-of-way deed? Your Honor, yes, we did note that. It is a bit odd. We're not sure why that occurred, but in any event, the government's position is that the title right-of-way deed doesn't have any legal import either to this analysis. Okay, now, the final question I have is at 1482, that same deed, the Phillips deed, seems to reference two pieces of property. The first paragraph of the conveyance language refers to the tract of land on which condemnation proceedings were filed on July 25th, 1899. Then there's a second paragraph which refers to two additional laws. Are we concerned with all of the property mentioned in that deed or just the property in that deed that is referred to as having been subject to condemnation proceedings? We're interested in both conveyances, Your Honor. What do they both? They both encompass the right-of-way area? I believe, yes, Your Honor. And again, you can see that on the map on JA 712. Okay, let me go back there. 712? Yeah. Yep. And you can see that there's lots as well as a strip that is the right-of-way. Okay. Yeah. All right. And again, Your Honor, I would just, in concluding and building off the point I was making, that the plaintiffs bear the burden of showing that these conveyances conveyed a mere easement interest and not the title. The claimants argue only in two pages in the reply brief that it's evident that there was a conveyance of an easement because of certain over-and-across language and references to the right-of-way. None of that language is in the conveying portion of the deed that conveys the actual right. That over-and-across language only is a descriptive term. It doesn't at all qualify the right that was conveyed. So claimants have not met their burden of demonstrating as a threshold manager that they have a compensable property right because they have not shown that these deeds convey an easement interest and not fee title. It's clear under Kansas law that fee title was conveyed. They have no property interest that's compensable under the Fifth Amendment, and this court should affirm the ruling of the trial court. Thank you. Thank you. Mr. Hearn, we went over a couple minutes, so you would prefer to rebuttal time. Why don't we add two minutes? I presume you may very well not need it. Thank you, Your Honor. Let me address several points. First, my friend has noted the burden. This is a motion for summary judgment that was filed by the government, and under the standard, the inferences would be drawn in favor of the opposing party, in that case the landowners. It's not our burden to disprove the government's argument in terms of the nature of the interest conveyed. They are the ones who brought these deeds into court and contended that on the basis of these deeds, the government is excused from their liability or obligation to pay these owners. What did you rely on? I remember this point, I think, is referenced in your reply brief, but what did you rely on initially, just the original condemnation? Correct. Everybody stipulated that the condemnation granted only an easement, and that therefore the government would be liable for a taking because the railroad did not own the land under the condemnation. So we relied on that. The government is the one who came in with the deeds and then said, by reason of these deeds, we actually find the railroad owns the land. And that is particularly relevant with those issues about the irrigation trust deeds, because there's nothing in the record to connect those to an actual ownership of the land, as opposed to a presumed release of a mortgage. So is your point, though, that even with these deeds, the court should have found as a matter of law that the transfers were for easements or right-of-ways only? Or are you wanting us to say that there's a material issue of fact as to those cases where the government brought in deeds as well as the notice of the condemnation? Our position will be emphatic that these deeds, these documents, as a matter of settled Kansas law, gave the railroad no more than an easement. So that as a matter of law, the argument that the government is making and that the CFC relied upon is one that is not valid legally. But should somebody have some factual inference about particularly the irrigation trust deed, for example, there's nothing in the record to show that they ever owned a fee interest in the land, that would be a factual issue that would be potentially a topic for remand, or certainly it's not a basis that supports the government contention. But in terms of the cases that the government relies on, they really fall into, under Kansas law, when you harmonize them, two categories. You have the general rule. The government spoke of a presumption that the fee is conveyed. That is not true. The opposite is the presumption for railroad rights-of-way, conveyance to the railroad, as we've read. And again, I quote, because it is such an emphatic statement by the Kansas Supreme Court, which says, this court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they were taken by condemnation or right-of-way deeds. The rule is in conformity with the state's longstanding public policy and gives effect to the intention of the parties who execute right-of-way deeds, rather than going through lengthy, expensive condemnation proceedings. So Kansas, in both Abercrombie and even before that in Allen's case, and then certainly in Harvest Queen and Barker and in Bowers, numerous cases have reaffirmed this principle of law that governs the interpretation. Do you read the general default rule that's stated in Stone to back off of that? The rule quoted in Stone was a citation to an ALR article. And what you find the cases in Kansas, Your Honor, fall into two categories. You have the cases where we're talking about a strip of land, generally 100 feet wide or less, where it's in the context of either a condemnation or the railroad actually building and operating a rail line across it. Those conveyances are always conveyances of easements. Never have they been held to be a conveyance of a fee. The fee of state conveyances, which would be Danielson and Knott, both of which, by the way, were decided before Harvest Queen, and the case the government relies on Stone, and then they mention Schellenberger. All of those cases involve the conveyance of a large track of land that was, in some cases, used later for a portion of it for a railroad. But in all those cases, there was no condemnation. There was no connection between the railroad condemning an interest or a strip of land. They were several acre square tracks of land, and the Stone Court says as much. And the Stone Court begins by affirming Abercrombie and Harvest Queen and quoting them at length and saying that that's still the law in Kansas. So those are the reasons we believe that in this case, these should rightly be understood to be conveyances of a easement only. What, if any, significance do you see in the prices on these deeds? I think the prices are telling. The railroad's right when they acquire an easement is an exclusive right to use this property. So that's a valuable property right, and it would affect the property interest. And as Judge O'Malley noted with Julia Fair, that is a case where the railroad came back to her after her husband died. She was widowed, and there was a significant section of property that they never acquired her interest in. Now, my friend makes the point that, well, she would have inherited it from her husband. True, but the problem isn't that. The problem is that the original condemnation never condemned her interest. It only condemned his interest. So she had a significant interest that was in her property that the railroad would have wanted to compensate her for. Because whether it's an easement or whether it's a fee transfer, the consideration does tell us something about what's being given. But certainly like the Rollins for a dollar, those are the kind of nominal transactions that often would happen. Cleaning up title, is anybody familiar with real estate? I fully agree with Ms. Robertson to the extent of saying that it's not determinative, but that the dollar amount can inform the analysis. I think that's correct. The dollar amount would inform, certainly for a dollar I'm not going to give you as much of an estate as I would for a greater amount of money. The one thing that's obvious when we look at these different conveyances, just looking at the language actually in the deeds. So for Julia Fair, she describes the interest that she conveyed as over and across each side of center line of the railroad as located over and across. The Rollins quick claim deed references it being a conveyance, as we clarified, of all the right-of-way now occupied by the railroad. They use the word right-of-way. What about in the case of the Rollins property? What is the relevance, if any, to that 1906 deed after? I think the 1906 deed is very relevant because what it tells us is what the Rollins, the 1906 deed is when the Rollins went and sold the property, a large track of property, not just the right-of-way, but all their property to another buyer. And when they described the property they sold in that deed, they said, but it's subject to this right-of-way for the railroad. So when they described the property they were selling, they referenced it as a railroad right-of-way. That was certainly their understanding that this was, their property was encumbered by a right-of-way, which would be an easement. And then similarly to the Phillips investment deed, which is that it describes that it is lost out. They used a right-of-way deed. Somebody wrote warranty over it, but as Abercrombie informs us, reference to warranty doesn't change that. But it states it's on a track which condemnation proceedings were filed. So every one of these conveyances, by the express terms used in the document, reference the conveyance of something for a railroad purpose, for a right-of-way, and in fact, we can go further and reference the existing right-of-way and existing condemnation that had already occurred. And it would make no sense for the railroad. Oh, I'm sorry, Your Honor. Yes, I will. We did mention that no court in Kansas has ever construed deeds like this to be a conveyance of a fee estate. And if the court were inclined to look at that, that would be a novel application that we believe should be certified to the Kansas Supreme Court consistent with the policies that that state has adopted for interpretation of such deeds. We thank both counsel. The case is submitted. That concludes our proceedings for this morning.